# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
### CHARLOTTE DIVISION
### CIVIL ACTION NO. 3:16-CV-00121-GCM

| | |
|---|---|
| CHARLOTTE'S BEST BREADS, LLC ) <br> GREAT HARVEST FRANCHISING, INC. ) <br> OUR DAILY BREAD FOR LIFE, LLC, ) <br> ) <br> **Plaintiffs,** ) <br> ) <br> v. ) <br> ) <br> PUMPERNICKEL ASSOCIATES, LLC ) <br> PANERA BREAD COMPANY, INC. ) <br> PANERA, LLC, ) <br> ) <br> **Defendants.** ) <br> ) | **ORDER** |

**THIS MATTER** is before the Court on Defendant Panera Bread Company's Motion to Dismiss for Failure to State a Claim and Motion for Extension of Time to Answer[1] (Doc. No. 11) and Motion to Change Venue (Doc. No. 13). Both Motions were filed on April 13, 2016. On May 2, 2016, Plaintiffs filed an Amended Complaint (Doc. No. 25), Memorandum in Opposition to the Motion to Change Venue (Doc. No. 26), and Memorandum in Opposition to the Motion to Dismiss (Doc. No. 27). Defendant filed its Replies on May 12, 2016. (Doc. No. 28, 29) For the following reasons, Defendant's Motion to Dismiss is **DENIED AS MOOT**, and its Motion to Change Venue is **DENIED.**

## I. BACKGROUND

Plaintiff Great Harvest Franchising, Inc. ("Great Harvest") is a Montana Corporation that licenses its name, advertising, and services to independently operated Great Harvest franchises.

---

[1] The Court granted Defendant's Motion for Extension of Time on May 16, 2016 because the deadline to file an Answer to the First Amended Complaint was approaching. Consistent with the Court's instructions at that time, the Answer to the Second Amended Complaint is due fourteen days from the issuance of this order

1

(Compl. at 3-4, ¶¶ 4, 8-9)  Plaintiffs Charlotte's Best Breads, LLC and Our Daily Bread for Life, LLC are franchisees of Great Harvest organized under the laws of North Carolina and with principal places of business in this state.  (Compl. at 3, ¶¶ 5-6)  Plaintiff Charlotte's Best Breads operates two bakeries in Charlotte, North Carolina, while Plaintiff Our Daily Bread for Life operates a bakery in Cary, North Carolina.  (Compl. at 3, ¶¶ 5-6)

In August 2014, Plaintiff Great Harvest began using the mark "BREAD. THE WAY IT OUGHT TO BE." in connection with its products and services.  (Compl. at 4, ¶ 10)  It later applied for and was granted a combined service mark and trademark on that slogan for the following goods and services:  (1) bread, cookies, and flour; (2) franchising services, namely business management advisory services in the establishment and/or operation of retail bakeries, and retail bakery shop services; (3) bakery services, namely, manufacturing bakery products to order and/or specifications of others; (4) restaurant and café services.  (Compl. at 4-5, ¶¶ 10-11)  Great Harvest filed its application on October 22, 2014, and its application was granted on December 1, 2015.  (Compl. at 5, ¶ 12)

Defendant Panera Bread Company, Inc. ("Panera") is a Delaware corporation with a principal place of business in St. Louis, Missouri.  (Memorandum in Support at 1, Doc. No. 15)  Also relevant to the pending motions, Panera operates an office in Needham, Massachusetts, where it alleges that marketing and public relations employees with information regarding this dispute are located.  (Memorandum in Support at 1-2, Doc. No. 15)  Panera further submits that it retains services of two third party companies—a communications firm in Boston and an advertising agency in New York—whose employees may have information that bears on the merits of the parties' dispute.  (Memorandum in Support at 2, Doc. No. 15)

Plaintiffs allege that, between June 21 and June 30, 2015, Defendant initiated an advertising campaign that included the slogan "FOOD AS IT SHOULD BE." (Compl. at 5, ¶ 17) Additionally, prior to beginning the campaign, Defendant filed applications with the U.S. Patent and Trademark Office to obtain trademark protection for the slogans "PANERA FOOD AS IT SHOULD BE" and "PANERA BREAD FOOD AS IT SHOULD BE." (Compl. at 5, ¶ 18) Plaintiff Great Harvest alleges that the areas of goods and services to which Defendant's mark applies overlap with the goods and services covered by its own mark. (Compl. at 5, ¶ 21) Great Harvest, along with the North Carolina franchisee Plaintiffs, argue that the similarity between the two slogans causes a likelihood of confusion or mistake among their customers. (Compl. at 7, ¶ 24)

Plaintiffs filed a complaint in this Court on March 10, 2016, alleging four claims: (1) trademark infringement, in violation of § 32 of the Lanham Act (15 U.S.C. § 1114) (Count I); (2) false designation of origin, in violation of § 43(a) of the Lanham Act (15 U.S.C. § 1125(a)) (Count II); (3) unfair competition and deceptive trade practices, in violation of North Carolina's Unfair and Deceptive Trade Practices Act ("UDTPA") (Count III); and (4) unfair competition by inducing reverse confusion, in violation of North Carolina common law. (Compl. at 7-11)

On April 13, 2016 Defendant filed a partial Motion to Dismiss for Failure to State a Claim and Motion for Extension of Time to Answer (Doc. No. 11) and Memorandum in Support (Doc. No. 12), as well as a Motion to Change Venue (Doc. No. 13) and Memorandum in Support (Doc. No. 15). In its partial Motion to Dismiss, Defendant argues that the North Carolina franchisee Plaintiffs lack standing to sue for trademark infringement under § 32 of the Lanham Act and, as a result, Count I should be dismissed as to those Plaintiffs. (Memorandum in Support at 3-5, Doc. No. 12) In its Motion to Transfer Venue, Defendant argues that this Court

should transfer venue to the United States District Court for the District of Massachusetts. (Memorandum in Support, Doc. No. 15)

On May 2, 2016, Plaintiffs filed an Amended Complaint (Doc. No. 25), a Memorandum in Opposition to the Motion to Change Venue (Doc. No. 26), and a Memorandum in Opposition to the Motion to Dismiss (Doc. No. 27). Plaintiffs' Amended Complaint adds two wholly owned subsidiaries of Panera as Defendants and makes clear that only Plaintiff Great Harvest alleges trademark infringement.[2] (Amended Compl., Doc. No. 25; *see also* Memorandum in Opposition, Doc. No. 27) Plaintiffs also argue that their choice of forum should be given great weight, and that a transfer to the District of Massachusetts would substantially shift the travel burdens associated with the litigation from Defendant to Plaintiffs. (Memorandum in Opposition, Doc. No. 26)

Defendant filed its Replies on May 12, 2016. (Doc. No. 28, 29) Thus, its Motions are now ripe for disposition.

## II. STANDARD OF REVIEW

When a defendant moves to transfer venue, the Court must determine whether venue is proper in the district in which the complaint was filed. United States Code Title 28 Section 1391(b) provides that a plaintiff may bring a civil action in: (1) "a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located"; (2) "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated"; or (3) "if there is no district in which an action may otherwise be brought . . . any judicial district in which

---

[2] This order refers to Panera Bread Company as the singular Defendant because the Motion to Transfer Venue and Motion to Dismiss were filed before the First Amended Complaint, which added the subsidiary Defendants, was filed.

4

any defendant is subject to the court's personal jurisdiction." If a case falls within one of the three categories set out in § 1391(b), venue is proper. *Atl. Marine Constr. Co., Inc. v. U.S. Dist. Court*, 134 S. Ct. 568, 578 (2013).

Section 1404(a) of the same Title provides, in relevant part: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought . . . ." 28 U.S.C. § 1404(a). Congress designed § 1404(a) as a "federal judicial housekeeping measure," *Van Dusen v. Barrack*, 376 U.S. 612, 636 (1964), that operates to "prevent the waste of time, energy, and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense," *id.* at 616 (internal quotation marks and citation omitted). In a motion brought pursuant to § 1404(a), the moving party bears the burden of establishing (1) that the plaintiff could have brought the case in the transferee district and (2) that transfer would make the litigation more convenient for the parties and for the witnesses, and would advance justice. *See Datasouth Computer Corp. v. Three Dimensional Techs*., Inc., 719 F. Supp. 446, 450 (W.D.N.C. 1989).

### III. ANALYSIS

**A. Motion to Dismiss and Extend Time**

Defendant argues that the North Carolina franchisee Plaintiffs lack standing to sue for trademark infringement because they are mere licensees and not registrants of the disputed mark. (Motion to Dismiss, Doc. No. 11) Plaintiffs respond that Count I is brought only by Plaintiff Great Harvest. (Memorandum in Opposition, Doc. No. 27) Additionally, Plaintiffs have filed an Amended Complaint that clarifies the distinction. (Amended Compl., Doc. No. 25) Defendant acknowledges in its Reply that its Motion is moot in light of the Amended Complaint.

5

Accordingly, it will be denied. Per the Court's order of May 16, 2016, Defendant will have fourteen days following this order to file an answer to the Amended Complaint.

**B. Motion to Transfer Venue**

Defendant argues that although venue is proper in the Western District of North Carolina, this case should be transferred to the District of Massachusetts. Plaintiffs do not dispute that they could have filed the Complaint in that district. Thus, the Court must consider whether transfer would promote convenience and further the interests of justice. This Court has consistently applied an eleven-factor test in analyzing whether transfer would advance the interests of justice. Those factors are:

> (1) the Plaintiff's choice of forum; (2) the residence of the parties; (3) the relative ease of access of proof; (4) the availability of compulsory process for the attendance of witnesses and the costs of obtaining attendance of willing witnesses; (5) the possibility of a view; (6) the enforceability of any judgment obtained; (7) the relative advantages and obstacles to a fair trial; (8) other problems which might make the litigation more expeditious and economical; (9) the administrative difficulties of court congestion; (10) the interest in having localized controversies resolved at home . . . ; and (11) the avoidance of issues involving conflict of laws.

*Am. Motorists Ins. Co. v. CTS Corp.*, 356 F. Supp. 2d 583, 585 (2005). The district court retains "substantial discretion" to decide transfer motions by weighing the various relevant factors. *Datasouth Computer Corp*, Inc., 719 F. Supp. at 450. "When weighing these factors, the court must keep in mind that a party seeking transfer pursuant to Section 1404(a) has the burden of persuasion and must show (1) 'more than a bare balance of convenience in his favor' and (2) 'that a transfer does more than merely shift the inconvenience.'" *Id*. at 451 (quoting *DMP Corp. v. Fruehauf Corp.*, 617 F.Supp. 76, 77 (W.D.N.C. 1985)).

Many of the factors are neutral in this matter. The Court finds that the possibility of a view is not implicated, an enforceable judgment would be obtained in either district, and that a fair trial would be probable before both courts. Additionally, there are no unique conflicts of law

issues that transfer would implicate or resolve. Nevertheless, the parties contest the applicability of the remaining factors to their respective positions, and the Court addresses each in turn.

Beginning with the first factor, it is well settled in this district that a plaintiff's choice of forum is ordinarily entitled to great weight. *See, e.g.*, *Datasouth Computer Corp*, Inc., 719 F. Supp. at 451. The Court regards the plaintiff's choice as "a paramount consideration in any determination of a transfer request" and has characterized it as a decision that "should not be lightly disturbed." *Commercial Equip.*, 738 F. Supp. at 976 (quoting *Datasouth*, 719 F. Supp. at 451). Here, because Plaintiffs have chosen to file suit in North Carolina, the first factor weighs against transfer. Defendant argues that this Court should afford the Plaintiffs' choice of forum little weight in its analysis because Plaintiff Great Harvest has its principal place of business in Montana and the claims have no special relationship to this district. (Memorandum in Support at 10, Doc. No. 15) However, Plaintiffs point out that Defendant was not subject to personal jurisdiction in Montana. (Memorandum in Opposition at 2-3, Doc. No. 26) Because Defendant does not suggest that it would consent to jurisdiction in Montana, Great Harvest's decision not to file there is immaterial to the transfer analysis.

Defendant cites repeatedly to this Court's decision in *Playvision Labs v. Nintendo of America, Inc.*, No. 3:14–CV–312–GCM, 2014 WL 6472848 (W.D.N.C. Nov. 18, 2014), arguing that it mandates a change of venue in this case. (Memorandum in Support at 9, Doc. No. 15; Reply Br. at 7, 9, Doc. No. 29) In *Playvision*, the defendant moved to transfer venue to the plaintiff's home district in California. *Id.* at *1. Additionally, although the defendant was at home in Washington, both parties in that case maintained significant corporate offices in the transferee district. *Id.* at *2. Here, however, Defendant has not consented to jurisdiction in Great Harvest's home state, nor chosen a venue in which any Plaintiff has a significant corporate

7

presence. Rather, Defendant seeks transfer to a district that is more convenient for its own marketing, social media, and intellectual property teams. (Memorandum in Support at 5-6, Doc. No. 15). In sum, the factual circumstances underlying the motions to transfer in *Playvision* and the instant matter are wholly distinguishable.

Turning to the second factor, residence of the parties, the Court finds that this factor also weighs against transfer. One party is a resident of the Western District of North Carolina, and an additional party is at home in this state. By contrast, no party resides in the District of Massachusetts. Defendant seeks to downplay the presence of the two franchisee Plaintiffs in this action, which provide a discernible connection to North Carolina and to the Western District. (Memorandum in Support at 12-15, Doc. No. 15) Defendant repeatedly suggests that the franchisee Plaintiffs are of little or no importance in this action, and thus that the Court should not consider their residence when weighing the convenience to the parties and witnesses. However, Defendant does not dispute that the franchisee Plaintiffs have standing to bring each of the claims stated in the First Amended Complaint—with the exception of Count I—and it is not clear at this stage of the proceedings how much, if any, harm that the franchisee Plaintiffs have suffered as a result of the trademark dispute. The Court is therefore unwilling to discount their participation in the case to the extent Defendant suggests is appropriate, and finds that the second factor weighs against transfer.

Each side suggests that its chosen forum would enable it to use compulsory process to compel the attendance of necessary witnesses. (Memorandum in Support at 18-20, Doc. No. 15; Memorandum in Opposition at 13, Doc. No. 26) Each party also suggests that it has selected the "local" forum, and thus that the associated court has a unique interest in resolving this controversy. (Memorandum in Support at 22-23, Doc. No. 15; Memorandum in Opposition at

15-16, Doc. No. 26) This Court, however, finds that these factors are neutral. Because either party will be disadvantaged in its ability to compel third party witnesses to attend trial if the forum they prefer is not selected, this factor is neutral. As for the "local" nature of this controversy, the Court disagrees with both parties that either forum is truly the local venue. This dispute concerns the effects of a national advertising campaign that cannot be said to be unique to either proposed venue. Moreover, both Defendant and Great Harvest have multiple locations in each proposed venue that may be implicated in any potential effects of customer confusion. Thus, the tenth factor is neutral.

The administrative difficulties of court congestion slightly suggest that this matter should remain before this Court. Although Defendant argues that this factor is neutral, it concedes that the median time from filing to disposition is slightly shorter in this district. (Memorandum in Support at 21-22, Doc. No. 15) Similarly, the ease of access of proof slightly favors transfer, as Defendant claims that its relevant evidence is located in the district of Massachusetts, but Plaintiff argues—and this Court agrees—that the bulk of discovery in this case is likely to be electronic.

Ultimately, it appears to the Court that whether this litigation is conducted in this district or in the District of Massachusetts, both sides will be forced to incur some travel costs. The effect of transfer, however, would merely shift those burdens so that they fall more heavily on Plaintiffs. Essentially, the travel costs associated with conducting litigation would be transferred from Defendant onto the franchisee Plaintiffs.[3] It is well established that a defendant's burden to establish the benefits of transfer is a heavy one, and a motion should "not be granted if a transfer would merely shift the inconvenience from the defendant to the plaintiff, or if the equities lean

---

[3] The Court also notes that inconvenience to Defendant's Massachusetts-based employees can be mitigated by conducting depositions in their home state.

but slightly in favor of the movant after all factors are considered." *Uniprop Manufactured Hous. Communities Income Fund II v. Home Owners Funding Corp. of Am.*, 753 F. Supp. 1315, 1322 (W.D.N.C. 1990)   The Court finds that Defendant has failed to meet its considerable burden in this instance, and its Motion to Transfer Venue is denied.

### IV. CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss is **DENIED AS MOOT**. Defendant's Motion to Change Venue is **DENIED.**

**SO ORDERED.**

Signed: May 31, 2016

Graham C. Mullen
United States District Judge